CORY v. LEONARD *et al.*, appellants.

*Surety — release by act of principal — rights of creditors.*

One Clinton being indebted upon notes to the N. bank, in the sum of $34,500 for which the bank held mortgages to the amount of $35,000, applied to W. L. and R. L. to indorse for him, notes in renewal of the old ones. This they at first refused to do, but consented upon the agreement of the bank that the mortgages should be held for their security, and indorsed to the amount of $25,000. Their indorsements were continued, the notes being renewed from time to time. Clinton's indebtedness to the N. bank having afterward become increased to the sum of $40,531.87, the bank, without the knowledge or consent of W. L. & R. L., canceled the mortgages, and took new ones for the same amount as security for all of Clinton's then indebted-

ness. Plaintiff had meanwhile become indorser for Clinton, upon $3,500, of increased indebtedness. Clinton failed. W. L. then paid all Clinton's indebtedness to the N. bank — took an assignment of the mortgages and a transfer of all the notes, sued plaintiff upon his indorsement, and recovered a judgment. Plaintiff then brought this action under the agreement made by the N. bank with Clinton, when the new mortgages were given, to recover his proportional share of the sums secured by the mortgages.

*Held*, PARKER, J., *dissenting*, that although W. L. & R. L. had been discharged from their liability by the act of the bank, in taking the new mortgages, and whatever their rights as against the bank might yet be, still as regarded the other creditors, W. L. stood precisely in the bank's position, and plaintiff could recover.

APPEAL by defendants, from a judgment in favor of plaintiff, entered upon the decision of a judge without a jury. The facts are stated in the opinion.

*E. Countryman*, for appellant.

*S. A. Bowen*, for respondent.

P. POTTER, J. This is an equity action, tried by a judge without a jury at the Otsego special term, the case is voluminous and the findings of the judge both of fact and conclusions of law, and drawn out at great length. The questions that arise are mostly upon the conclusions of law of the judge. The material points are as follows: The defendants Leonards, as indorsers of bank paper for one William M. Clinton, as maker and principal, at the Second National Bank of Cooperstown, made their indorsements upon the assurance of the officers of the said bank, that certain mortgages to the amount of $35,000, made by Clinton, and then in the possession of said bank, were left as collateral security for Clinton's said paper. Previous to August, 1865, Clinton was indebted as principal to the Bank of Cooperstown, about $80,000; and in that month the Second National Bank of Cooperstown was organized, and the officers, including the directors of the Bank of Cooperstown, became the officers of the said Second National Bank, and the business of the latter bank was conducted in the same building as that of the former, and the business of the former ceased with the commencement of business of the latter. The debt of Clinton to the former bank then of $81,500, was arranged by taking bonds and mortgages formerly given as collateral to the amount of $46,500, in absolute

payment of that sum and two other collateral mortgages of $30,000 and $5,000, were passed over to, and held by, the Second National Bank of Cooperstown, from which last-named bank upon notes, the balance of Clinton's debt to the Cooperstown Bank was obtained and paid. No written transfer of these two collateral mortgages was made from the Cooperstown to the Second National Bank, nor any other agreement than such as may be implied from the transaction itself, the relation of the banks to each other, and, the change of the balance of Clinton's debt from one to the other. Twenty-four thousand eight hundred dollars of this balance due the Cooperstown Bank by Clinton, was paid by Clinton's check on the Second National Bank, indorsed by the cashier of the latter, and paid from the proceeds of notes of Clinton's discounted by the latter bank who held the collateral mortgages to the amount of $35,000. Before these notes to the Second National Bank became due, Clinton asked the defendants Leonards, to indorse notes in order to renew them, which they declined doing until informed by the cashier of the Second National Bank that the bank held the $30,000 mortgages as security, and that if they indorsed Clinton's notes they should be protected by it.

Relying upon that assurance, they indorsed to the amount of $25,000. These notes were renewed from time to time down to January, 1870, when Clinton failed. Their liability was reduced, however, by an indorsement upon one of the notes by one of the defendants, Johnson, who took the place of the Leonards, so that Leonards' liability was $20,500.

After the Leonards had been so induced to indorse (which was first in January, 1866), the plaintiff Cory, sometime in the spring of that year, obtained from Clinton a note for $3,500 for an indebtedness due him, Cory, and obtained its discount at the Second National Bank, which note was also continued by renewals down to the time of Clinton's failure in 1870. In October, 1867, Clinton's whole indebtedness or liability to this bank was $40,531.87, including the note indorsed by Cory and those indorsed by Leonards, Johnson and others. About this date, Clinton executed directly to the said Second National Bank two bonds and mortgages, one for $30,000, the other for $5,000, covering the same premises as the two former mortgages for the same amounts before held by them, given to the bank of Cooperstown, and upon the execution of these new mortgages the old mortgages were delivered up by the Second Na-

tional Bank of Cooperstown to Clinton; and the new mortgages given by Clinton were, by a new agreement between Clinton and the Second National Bank, received by the latter as collateral security for all Clinton's liabilities to said bank, which, at the time, amounted to the said sum of $40,531.87, including the plaintiff's note of $3,500. Of this agreement, the Leonards were not informed.

After the failure of Clinton, in June, 1870, the bank gave notice to the Leonards to pay up the paper upon which they were indorsers for Clinton. Negotiations then commenced between the bank and W. F. Leonard, one of the indorsers, which ended in a transfer by the bank to said W. F. Leonard of the said two mortgages, and also all the notes and liabilities of Clinton to said bank, amounting to the said $40,500, for which *the bank claimed* to hold the mortgages as collateral security.

W. F. Leonard, after receiving this assignment, commenced an action against the plaintiff Cory to recover the amount of his note so assigned, to him, and recovered a judgment thereon for the amount thereof, and collected said judgment of Cory.

The action now at bar is an equitable action brought by Cory, to be subrogated to the rights and interests to which he was entitled as a creditor of Clinton in the collateral security of said two mortgages so held by the bank, under the agreement of the bank with Clinton, and so assigned to W. F. Leonard, and though all the other creditors of Clinton at the bank, and also the bank itself, are made parties in this action, the principal issue here is between the plaintiff and W. F. Leonard, as assignee of the mortgages.

No personal claim is made by Cory in the action against any of the defendants, except the defendants W. F. & Russel Leonard and Henry F. Spalding, the owner of the equity of redemption in the $30,000 mortgage premises.

The judge found, as a fact, that the bank gave up the old mortgage to Clinton and took the new mortgages under an agreement with Clinton that they should be held as collateral security for the whole of Clinton's then existing indebtedness, $40,531.87, without preference of one debt over another.

If this finding is true, which is not here to be adjudged, it was a gross fraud committed by the bank and Clinton against the rights of defendant Leonard, whose indorsement was obtained to the amount of $25,000, upon the assurance of the bank that the old $30,000 mortgage should be held for their protection. Whether

there is evidence to sustain this finding will be examined hereafter. The security of the Leonards was upon the mortgage delivered up by the bank to Clinton, and as to this, the judge correctly finds that the bank gave them up to Clinton without the consent of the Leonards.

He also finds that the Leonards were not informed and had no knowledge of the change of securities made by the Second National Bank and Clinton, when they afterward continued their indorsements upon promissory notes of Clinton to the bank. But he had previously found that the Leonards, having renewed their notes subsequent to the giving the new mortgages, waived the release given by the bank to Clinton on the former mortgages, and as to security, and that they again became liable, but without preference over indorsers on the other paper then in the bank. And yet by another finding, as a conclusion of law, the judges hold, " That the bank thereby released Leonards from all liabilities as indorsers on the notes then in the bank," and still by another conclusion of law he holds " that the Second National Bank of Cooperstown acquired no right to the two bonds and mortgages held by the Bank of Cooperstown, November 1st, 1865 (the old mortgages in question of $30,000 and $5,000). If the Second National Bank of Cooperstown was a party to the issue tried, or if these findings were material to a decision, the judgment could not stand upon these conclusions and findings; as legal propositions they are clearly erroneous.

The debt of Clinton to the Cooperstown bank, of $81,000, was paid them to the amount of $46,500, by the absolute assignment of collateral mortgages to that extent. The remainder of his debt was paid only in the way of carrying it into the Second National Bank, and on discounted notes there, which in fact were only renewals, with $35,000 of the collateral mortgages as collateral security for the same debt left there by Clinton the mortgagor.

·The discontinuance of business by the former bank, and the continuance of the same business by the latter, by the same officers in the same banking-house; the closing up of debts in the former by opening them by the latter upon notes and the same collateral securities handed over and kept by the latter, as such assumed to be so held by the bank, and indorsements secured by reason of them, is too conclusive, in the absence of all contradiction of the proposition that the latter bank did acquire an interest in such collateral bonds. The finding to the contrary, for the reason given, was error,

whether it be regarded as fact or law. No written assignment was necessary from the old bank to the new, under such circumstances, to make an equitable transfer of such securities; it, of itself, constituted an equitable transfer. *Hooker* v. *Eagle Bank*, 30 N. Y. 87, and cases cited; *Prescott* v. *Hull*, 17 Johns. 284; *Sexton* v. *Fleet*, 2 Hilt. 485.

The surrendering of the first bonds and mortgages by the Second National Bank, to Clinton, and taking new mortgages of the same amount upon the same property as collateral to other different and more extended liabilities, was, in effect, a release by the bank of the liabilities of the Leonards, as indorsers, upon Clinton's notes; and the subsequent indorsements by the Leonards of renewal notes, in ignorance of such arrangement, was no waiver of this objection by them, or the creation of a new liability to the bank by the Leonards, by such subsequent indorsements. This is only stated here to express my dissent to the above conclusion. In this condition of things the bank could not have enforced the collection of the notes against the Leonards. But in this action, as between the plaintiff, and the Leonards, that question cannot be raised. The question here, now, is not one between the Leonards and the bank, but between Cory and the Leonards, and in the view I have taken of the issue to be determined, the final conclusion of the learned judge may be sustained upon other grounds, notwithstanding the errors above referred to, if the evidence will sustain certain other findings in the case, of which hereafter.

After the failure of Clinton and notice to the Leonards by the bank to pay their liabilities as indorser, Willard F. Leonard, one of the defendants, entered into a contract with the Second National Bank of Cooperstown, by which the said Willard F. Leonard took from the bank an assignment of the two bonds and mortgages, and all the notes and drafts held by the said bank against Clinton, for which obligations the bank *claimed* that the two last mortgages given by Clinton directly to them were held as collateral security; which demands of the bank included the note indorsed by the plaintiff Cory; all the notes indorsed by the Leonards and others, amounting in all to $40,500, and the said Willard F. Leonard paid therefor the full face of the said notes, obligations, etc.

This transfer, it is clearly seen, made a change of relations between the parties to this action. Willard F. Leonard now occupied the same relation toward the other creditors of Clinton, that the bank

Cory v. Leonard.

held prior to this transfer; he holds the securities for the benefit of the same persons that the bank held them before the transfer. He has the same but no better or higher title to these mortgages than his grantor had. Of whatever fraud or fraudulent concealment, or breach of trust, the bank was guilty toward the Leonards, the latter by taking the transfer of these two last mortgages are bound to give to the creditors of Clinton, for whose security the bank held the mortgages, the same protection and interest therein as the bank would have been bound to give them had no transfer been made.

This simplifies the question to one of fact, viz.: Did the Second National Bank of Cooperstown hold these mortgages for the security of Cory, the plaintiff?

It may fairly be inferred that when W. F. Leonard took the assignment of different mortgages in which the names of the mortgagees and their date differed from those upon which he made his first indorsement, that he knew they were not the same, but upon this no point is made, and it may be that the date was overlooked. The judge found, as a *fact*, that Clinton delivered the last two bonds and mortgages to hold as collateral security for the payment of the entire sum of the said $40,531.87; Clinton's papers held by the bank, and notes, etc., given in renewal thereof; *and* that no particular debt or indorser had preference over another; *and also* " that said bank also continued to hold the said two bonds and mortgages as collaterals, and in the manner aforesaid, at the time of Clinton's insolvency; and so held the same together with said notes and drafts down to the time they so transferred them to the said W. F. Leonard, 18th June, 1870."

And the said judge also further found: " That at the time the said Leonard took the assignment of said mortgages, it was with notice and full knowledge that the same were held by said bank as collateral security for the entire amount of said $40,500, the notes and drafts aforesaid, and not for the benefit of any indorser in preference to another." If this last finding of facts is sustained by the evidence, the judgment is right as between these parties; but this fact is excepted to by the defendants, and the defendants insist that there is no evidence to sustain this finding.

I have read the testimony with care, and am unable to find any direct evidence upon that point. I think this finding of fact is error. If there is any evidence, it is inferential from other facts. But, perhaps, upon the legal theory of the case adopted by the

judge, it may not be decisive of the results. The theory upon which the plaintiff may recover in this case is this: First. Though the Second National Bank of Cooperstown obtained the indorsements of the Leonards upon Clinton's notes, upon the assurance that they should be protected by a $30,000 bond and mortgage of Clinton's as collateral security for their indorsement, and though they afterward surrendered up to Clinton that mortgage and took new mortgages from him upon a new agreement that they should stand as collateral security for all the notes, etc., of Clinton's then in the bank, including the plaintiff's, which was not in existence when the indorsements were obtained from the Leonards, and though the bank thereby committed a gross fraud upon the Leonards — a fraud that absolved the Leonards from liability upon their indorsements, yet the taking these last mortgages from Clinton by the bank, upon an agreement with him that such mortgages should stand as collateral for *all* parties liable on Clinton's paper then in the bank — in effect, in equity, made the bank trustees of the fund for the benefit of all the sureties upon Clinton's paper then in the bank. This agreement of the bank to that end inured to the benefit of such sureties; and though by such an act the bank, in law, released the Leonards from liability, while it kept them in ignorance of the fact, this did not affect the other creditors, upon whom no fraud had been committed. But while the Leonards were thus in fact released, W. F. Leonard, one of them, entered into a new legal or equitable arrangement with the bank, by which he assumed and became subject to new liabilities to the creditors of Clinton. What the effect of this new contract may be, now or hereafter, as between him and the bank, is not before us, the bank not being a party to the issue in the case at bar. What therefore appears in this case to be fraudulent conduct on the part of the bank, may not be such in an issue to be tried between the Leonards and the bank. For the purposes of this case, W. F. Leonard, by taking the assignment of the collateral securities of Clinton from the bank, became bound to extend to the creditors of Clinton all the rights which those creditors acquired by virtue of the contract made between Clinton and the bank, at the time those securities were pledged by Clinton and received by the bank upon that understanding, how fraudulent soever that agreement may have been to the rights of the Leonards. There are sufficient uncontroverted facts in the case to sustain the decree

upon this theory. I think upon this ground the judgment must be affirmed.

MILLER, P. J., concurred in the result.
PARKER, J., dissented.

*Judgment affirmed, with costs.*